BETH S. GINSBERG, OSB #070890
MICHAEL R. CAMPBELL, OSB #870016
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7581
Facsimile: (206) 624-0900
Email: beth.ginsberg@stoel.com
Email: michael.campbell@stoel.com

Attorneys for Oregon Water Quality Standards Group

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, a non-profit corporation,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, a United States Government Agency,<br><br>    Defendant,<br><br>and<br><br>STATE OF OREGON; OREGON WATER QUALITY STANDARDS GROUP; THE FRESHWATER TRUST,<br><br>    Intervenors-Defendants. | Case No.: 3:12-cv-01751-AC<br><br>**INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES** |

Page 1  -  **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

## I.  INTRODUCTION

Intervenor-Defendant Oregon Water Quality Standards Group ("OWQSG") joins the arguments of the U.S. Environmental Protection Agency ("EPA") in its Brief in Opposition to Plaintiff's Motion for Summary Judgment on Remedy ("EPA's Brief") (Dkt. No. 162).  OWQSG writes separately to supplement EPA's response on two issues:  (1) Plaintiff's requested "First Mandatory Remedy," which would require EPA, within 90 days of the Court's judgment, to review and then approve or disapprove each waterbody-specific application of Oregon's now-disapproved natural conditions criterion ("NCC"), and (2) Plaintiff's request that the Klamath Basin Temperature Total Maximum Daily Load ("TMDL") "stay in place" and "not be vacated" pending the establishment of a revised TMDL.

As to the first issue, there is no longer any legal authority or practical reason to order EPA to review each waterbody-specific application of the NCC.  In August 2013, EPA disapproved the NCC pursuant to Clean Water Act ("CWA") subsection 303(c).  Therefore, Oregon cannot use, and is not using, the NCC or any waterbody-specific application of the NCC as a water quality standard under the CWA.  Nor is Oregon seeking EPA's approval of the NCC or any waterbody-specific application of the NCC.  EPA has no authority under subsection 303(c) to review past applications of a state water quality standard that EPA has already disapproved, that is no longer legally effective under the CWA, and that the state is no longer using or proposing to use.  Moreover, such a review could have no practical effect other than to require a substantial diversion of EPA's and Oregon's limited water quality resources, which could be better spent on developing the many replacement temperature TMDLs that will be required by the decision in this case.

Page 2  -  **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

96230440.2 0034266-00004

Regarding the Klamath Basin Temperature TMDL, EPA has never approved this TMDL, and therefore it has never been in effect. As such, it cannot "stay in place" or remain in effect pending any action by EPA pursuant to the Court's approval of EPA's motion for a voluntary remand of the issues related to that TMDL.

## II.  BACKGROUND

Plaintiff's and EPA's briefs include an extensive statement of the legal, factual, and litigation background of this case. OWQSG summarizes here only the background that is relevant to the two issues that it separately addresses, which relate primarily to Plaintiff's First, Second, and Eighth Claims for Relief.

**A.    The History and Application of the NCC**

    1.    *The NCC*

In December 2003, the Oregon Environmental Quality Commission ("EQC"), the governing body for the Oregon Department of Environmental Quality ("DEQ"),[1] adopted revised water quality standards for temperature. *See* OAR 340-041-0028 (2005); *Nw. Envtl. Advocates v. U.S. Envtl. Prot. Agency*, 855 F. Supp. 2d 1199, 1207 (D. Or. 2012) ("*NWEA*"). The standards included numeric temperature criteria for waters identified as having certain species and life-stages of fish, OAR 340-041-0028(4) (2005), and the NCC, OAR 340-041-0028(8) (2005). The NCC was a "narrative" water quality standard, which provided that, if DEQ determined that the natural temperature of the waterbody was higher than the otherwise applicable numeric temperature criterion, the natural temperature would be the applicable criterion:

---

[1] The EQC is a five-member commission appointed by the Governor of Oregon. *See* ORS 468.010(1). The EQC establishes rules and policies for DEQ and appoints its director. *See* ORS 468.015-.020, 468.035(1), 468.040, 468.045(1). The EQC and DEQ are authorized to implement the CWA in Oregon, *see* ORS 468B.035(1), and the EQC is authorized to adopt rules as necessary to carry out this authority, *see* ORS 468B.035(2). In particular, the EQC is authorized to establish, by rule, water quality standards for Oregon. *See* ORS 468B.048(1). DEQ itself has no authority to adopt rules or water quality standards. *See* ORS 468.035, 468B.048.

Page 3   -   **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

> Where the department [DEQ] determines that the natural thermal potential of all or a portion of a water body exceeds the biologically-based criteria in section (4) of this rule [the applicable numeric criterion], the natural thermal potential temperatures supersede the biologically-based criteria, and are deemed to be the applicable temperature criteria for that water body.

OAR 340-041-0028(8) (2005). On March 2, 2004, EPA approved both the numeric temperature criteria and the NCC as water quality standards for Oregon pursuant to CWA subsection 303(c), 33 U.S.C. § 1313(c). *NWEA*, 855 F. Supp. 2d at 1207.

Following EPA's approval of the NCC, DEQ established the temperature TMDLs that are at issue in this case between 2004 and 2010. In accordance with Oregon's approved standards, the TMDLs implemented the superseding NCC, rather than the otherwise applicable numeric temperature criterion, for those waterbodies in which DEQ determined that the natural temperature exceeded the numeric criterion. *See* Findings and Recommendation at 6-7 (Dkt. No. 132).

In *NWEA*, Plaintiff challenged EPA's approval of both the numeric temperature criteria and the NCC. Although the court upheld EPA's approval of the numeric criteria, it granted Plaintiff's motion for summary judgment with respect to the NCC.[2] *NWEA*, 855 F. Supp. 2d at 1213-18. The court gave two reasons for rejecting EPA's approval of the NCC. The "first, and most important," was that DEQ's application of the NCC to a waterbody "supplant[ed]" the otherwise applicable numeric temperature criterion without requiring EPA's approval under CWA subsection 303(c), 33 U.S.C. § 1313(c), of each waterbody-specific application of the NCC. *See* 855 F. Supp. 2d at 1217. In addition, the court held that, given the many human-

---

[2] The court also upheld EPA's approval of Oregon's "human use allowance" ("HUA") for temperature, OAR 340-041-0028(12)(b) (2005), which authorizes "[i]nsignificant additions of heat," which are defined as additions of heat that will cause an increase in temperature of no more than 0.3°C, from all human sources combined, when the waterbody does not meet the applicable temperature criterion. *NWEA*, 855 F. Supp. 2d at 1218 n.8.

Page 4 - **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

caused changes in waterbodies and the difficulties of estimating historical water temperatures, EPA had not "articulate[d] a rational[] basis" for concluding that the NCC would protect salmonids. *Id.* at 1218.

Thereafter, on April 10, 2013, the court entered a stipulated order which provided:

> EPA's approval of Oregon's Natural Conditions Criterion at OAR 340-041-0028(8) ("NCC") is set aside and remanded to EPA. Within 120 days of entry of this Order, EPA shall, consistent with this Court's Order on Summary Judgment and the requirements of the Clean Water Act and EPA's implementing regulations, take action pursuant to 33 U.S.C. § 1313(c)(3) on the NCC.

Stipulated Order on Narrative Water Quality Criteria and Antidegradation Internal Management Directive at 2, *NWEA*, Case No. 3:05-cv-1876-AC, Dkt. No. 370 (D. Or. Apr. 10, 2013).

In response to the court's order, and "[i]n light of the views expressed by the court," EPA on August 8, 2013 disapproved OAR 340-041-0028(8)—the NCC—pursuant to CWA subsection 303(c). Declaration of Beth S. Ginsberg ("Ginsberg Decl."), Ex. A. EPA also stated that, because the NCC offered salmonids no additional protection beyond Oregon's numeric temperature criteria, which the court had upheld, the CWA did not require a replacement for the NCC. *See id.*

Although the EQC did not formally repeal the NCC rule following EPA's decision, the consequences of EPA's disapproval are reflected in a note appended to the rule in Oregon's official rules compilation:

> NOTE: On August 8, 2013, the Environmental Protection Agency disapproved rule section OAR 340-041-0028(8). Consequently, section (8) is no longer effective as a water quality criterion for purposes of CWA Section 303(c) and it cannot be used for issuing certifications under CWA Section 401, permits under CWA Section 402, or total maximum daily loads under CWA section 303(d).

Since EPA's disapproval of the NCC, neither the EQC nor EPA has proposed or promulgated a water quality standard to replace it.

Page 5 - **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

96230440.2 0034266-00004

### 2. *Plaintiff's Challenge to NCC-Based TMDLs in This Case*

Prior to the 2012 invalidation of EPA's approval of the NCC in *NWEA*, DEQ and EPA had relied on the NCC in establishing and approving, respectively, the temperature TMDLs at issue in this case. After the NCC was disapproved, Plaintiff filed this action to challenge, among other things, both (1) EPA's approvals of temperature TMDLs based on the NCC and (2) the absence of any EPA review pursuant to CWA subsection 303(c) of the waterbody-specific NCC determinations included in the TMDLs.

Plaintiff's First Claim for Relief, under the federal Administrative Procedure Act, alleges that EPA's approvals of the TMDLs were "not in accordance with law" because the TMDLs were based on the NCC, rather than the applicable numeric temperature criteria. *See* 5 U.S.C. § 706(2)(A); Findings and Recommendation at 26-30 (Dkt. No. 132). Magistrate Judge Acosta recommended that the Court grant Plaintiff's motion for summary judgment on this claim because he determined that the disapproval of the NCC in *NWEA* should be applied retroactively. *See* Findings and Recommendation at 22-26 (Dkt. No. 132). If the NCC was retroactively invalid, the TMDLs were inconsistent with CWA subsection 303(d), 33 U.S.C. § 1313(d), because they were not based on the applicable water quality criteria, which were the more stringent numeric temperature criteria that the NCC supplanted.[3] *See* Findings and Recommendation at 26-30 (Dkt. No. 132).

Plaintiff's Second Claim for Relief alleges that EPA violated a non-discretionary duty under the CWA by failing to review the waterbody-specific applications of the NCC in the TMDLs as revised water quality standards pursuant to CWA subsection 303(c), 33 U.S.C.

---

[3] Magistrate Judge Acosta, however, recommended that the Court deny Plaintiff's motion on its First Claim as to those TMDLs approved by EPA before September 27, 2006, because those approvals were outside the relevant statute of limitations. Findings and Recommendation at 46 (Dkt. No. 132).

Page 6  -  **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

§ 1313(c). Relying on *NWEA*, which held that waterbody-specific applications of the NCC constituted revised water quality standards, *see NWEA*, 855 F. Supp. 2d at 1217, Magistrate Judge Acosta recommended that the Court grant Plaintiff summary judgment on this claim, as well. *See* Findings and Recommendation at 30-32 (Dkt. No. 132).

No party objected to the recommendations regarding Plaintiff's First and Second Claims for Relief. Order at 3 (Dkt. No. 149). Accordingly, the Court granted Plaintiff's motion for summary judgment with respect to these claims.[4]

**B.    The Klamath Basin Temperature TMDL**

Unlike the other temperature TMDLs at issue in this case, the Klamath Basin Temperature TMDL has never been approved by EPA. DEQ submitted the TMDL to EPA for approval pursuant to CWA subsection 303(d), 33 U.S.C. § 1313(d), on December 21, 2010, but EPA never acted on the submission by approving or disapproving the TMDL. *See* Order at 22 (Dkt. No. 149). After EPA disapproved the NCC, on which the Klamath Basin Temperature TMDL relied, DEQ withdrew its submission of the TMDL on February 11, 2015. *See id.*

Plaintiff's Eighth Claim for Relief alleges that EPA violated CWA subsection 303(d), 33 U.S.C. § 1313(d), by failing to act on DEQ's submission of the Klamath Basin Temperature TMDL within 30 days. In response to the claim, EPA moved for a "voluntary remand" (Dkt. No. 89), which Magistrate Judge Acosta recommended granting with an order that "EPA and Oregon should submit a revised . . . Klamath temperature TMDL within two years of the adoption of this Findings and Recommendation." Findings and Recommendation at 27-28 (Dkt. No. 133). This Court adopted the recommendation, directing that "EPA and Oregon must

---

[4] With respect to the First Claim for Relief, the Court denied Plaintiff's motion and granted the cross-motions for summary judgment as to those TMDLs approved by EPA before September 27, 2006, because those approvals were outside the relevant statute of limitations. Order at 24 (Dkt. No. 149).

Page 7  -   **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

96230440.2 0034266-00004

submit a revised . . . Klamath temperature TMDL within two years of . . . [April 11, 2017]."

Order at 24-25 (Dkt. No. 149).

## III. ARGUMENT

A. **Following EPA's disapproval of the NCC, there is no longer any legal authority or practical reason for EPA to review DEQ's waterbody-specific applications of the NCC as water quality standards pursuant to CWA subsection 303(c).**

Plaintiff seeks the following remedy for its Second Claim:

> EPA shall review and approve or disapprove under Clean Water Act ("CWA") Section 303(c) all new or revised criteria established pursuant to Oregon's Natural Conditions Criterion ("NCC"), and contained in all TMDLs listed in Paragraphs (2) and (3) of this Judgment.[2] Such review shall evaluate all applicable requirements for water quality standards approval at 40 C.F.R. § 131.5, *including whether Oregon's use and application of the NCC in the TMDLs will protect Oregon's designated uses*. Consistent with the deadlines established at CWA Section 303(c)(3), EPA shall complete its review and approval or disapproval within 90 days of entry of this Judgment.
>
> _____
> [2] For purposes of this Judgment, the phrase "all new or revised criteria" shall include all use of the Natural Conditions Criterion to amend, replace, or alter in any way the prior numeric criteria.

Plaintiff's Proposed Judgment Including Vacatur at 3 (Dkt. No. 158-1); Plaintiff's Proposed Judgment Without Vacatur at 3 (Dkt. No. 158-2) (emphasis added). Plaintiff argues that this remedy is required in order to effectuate EPA's non-discretionary duty to review new or revised state water quality standards under CWA subsection 303(c), 33 U.S.C. § 1313(c).[5] Plaintiff's Opening Brief on Remedies at 15-17 (Dkt. No. 158) ("Plaintiff's Brief"). For the reasons expressed in EPA's Brief and as supplemented below, there is no longer any legal basis to

_____
[5] The CWA provides: "Whenever the State revises or adopts a new standard, such revised or new standard shall be submitted to the [EPA] Administrator." 33 U.S.C. § 1313(c)(2)(A). EPA must either approve the standard "within sixty days after the date of submission," in which case "such standard shall thereafter be the water quality standard for the applicable waters of that State," or disapprove the standard "not later than the ninetieth day after the date of submission." *Id.* § 1313(c)(3).

Page 8  -  **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

96230440.2 0034266-00004

require EPA to review the waterbody-specific applications of the NCC, and it would have no practical effect other than to divert EPA's and DEQ's resources from other water quality work.

This Court adopted the portion of Magistrate Judge Acosta's decision stating that EPA, when it reviewed DEQ's TMDL submissions, had a non-discretionary duty to review DEQ's waterbody-specific applications of the NCC as water quality standards under CWA subsection 303(c).  *See* Order at 3 (Dkt. No. 149); Findings and Recommendation at 30 (Dkt. No. 132).  When EPA approved the temperature TMDLs, however, the NCC had not yet been disapproved.[6]  Whatever obligation EPA may have had *then* under CWA subsection 303(c) to review DEQ's waterbody-specific applications of the NCC was later satisfied when EPA disapproved the NCC pursuant to subsection 303(c) in August 2013.  Ginsberg Decl., Ex. A.  Now that EPA has disapproved the NCC, there is no legal or practical reason to require EPA to review DEQ's waterbody-specific applications of the NCC.

Plaintiff does not explain why it believes EPA's subsequent disapproval of the NCC is insufficient to fulfill any non-discretionary duty that EPA may have had under CWA subsection 303(c) to review the waterbody-specific applications of the NCC in the TMDLs.  EPA's disapproval of the NCC is acknowledged briefly in the Background section of Plaintiff's Brief, together with the observation that "Oregon never formally abolished the NCC and it remains a part of the Oregon Administrative Code," but there is no discussion of the disapproval in the brief's argument.  Plaintiff's Brief at 9.

Plaintiff is correct that the EQC has not formally repealed the NCC, OAR 340-041-0028(8).  But that has no legal or practical significance, and Plaintiff makes no argument to the

---

[6] As described in Section I, above, all the EPA TMDL approvals at issue in this case occurred after EPA had approved the NCC rule on March 2, 2004 but before the court in *NWEA* set aside that approval on April 10, 2013.

Page 9   -   **INTERVENOR-DEFENDANT OREGON WATER QUALITY
              STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S
              OPENING BRIEF ON REMEDIES**

96230440.2 0034266-00004

contrary.[7] Because EPA's initial approval of the NCC in 2004 was successfully challenged by Plaintiff, and because EPA ultimately disapproved the NCC, the NCC is not effective under the CWA. *See* 33 U.S.C. § 1313(c)(3) (state water quality standards are effective under the CWA only after approval by EPA); 40 C.F.R. § 131.21(c)(2) (same). Moreover, DEQ and the EQC understand that the NCC is not effective under the CWA and have acted accordingly. Following EPA's disapproval of the rule, DEQ proposed and the EQC adopted the following note, which was appended to OAR 340-041-0028(8):

> NOTE: On August 8, 2013, the Environmental Protection Agency disapproved rule section OAR 340-041-0028(8). Consequently, section (8) is no longer effective as a water quality criterion for purposes of CWA Section 303(c) and it cannot be used for issuing certifications under CWA Section 401, permits under CWA Section 402, or total maximum daily loads under CWA section 303(d).

Plaintiff does not identify any instance, following EPA's disapproval of the NCC, in which DEQ has taken the position that the NCC or any waterbody-specific application of the NCC remains effective as a water quality standard under the CWA. Nor does Plaintiff identify any legal or practical consequence that would follow from EPA's review of the waterbody-specific applications of the NCC at issue in this case, beyond those that already stem from EPA's disapproval of the NCC.[8]

Furthermore, with EPA's disapproval of the NCC, DEQ no longer has any authority to establish waterbody-specific temperature criteria. DEQ has no authority of its own to adopt rules

---

[7] If Plaintiff's concern is simply that the EQC has not yet formally repealed the NCC, OAR 340-041-0028(8), EPA's review and disapproval of the waterbody-specific applications of the NCC will do nothing to change that. EPA has no authority under CWA subsection 303(c) to force a state to formally repeal an administrative rule; EPA can only disapprove the rule's use as a water quality standard under the CWA. *See* 33 U.S.C. § 1313(c)(3). With respect to the NCC, EPA has already done that.

[8] Plaintiff cites several cases for the proposition that EPA has a non-discretionary duty to review state water quality standards under CWA subsection 303(c). Plaintiff's Brief at 15-17. In none of the cases, however, did the court order EPA to review applications of a standard that EPA had already disapproved and that the state was no longer implementing or believed that it had any legal authority to implement.

Page 10 -    **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

96230440.2 0034266-00004

or water quality standards.  *See* ORS 468.035, 468B.048(1).  Only the EQC has that authority.  *See* ORS 468.015, 468.020, 468B.048(1).  DEQ's authority to apply the NCC to specific waterbodies stemmed from the NCC itself, OAR 340-041-0028(8), which was adopted as a rule by the EQC and submitted to EPA for approval in accordance with state law and CWA subsection 303(c).  In order for DEQ to submit waterbody-specific temperature criteria to EPA for approval now, after the disapproval of the NCC, the EQC would need to first adopt the criteria as water quality standards.  No such criteria, however, have been proposed, much less adopted.

But even if (1) DEQ's waterbody-specific applications of the NCC somehow remain in effect as water quality standards following EPA's disapproval of the NCC (as well as this Court's invalidation of EPA's approvals of the TMDLs in which they were included) and (2) it were necessary for EPA to review these waterbody-specific applications of the NCC pursuant to CWA subsection 303(c), Plaintiff's requested remedy is much too broad.  There is no legal or practical reason to require EPA to evaluate, as Plaintiff requests, "***all*** applicable requirements for water quality standards approval at 40 C.F.R. § 131.5, including whether Oregon's use and application of the NCC in the TMDLs will protect Oregon's designated uses."  Plaintiff's Proposed Judgment Including Vacatur at 3 (Dkt. No. 158-1); Plaintiff's Proposed Judgment Without Vacatur at 3 (Dkt. No. 158-2) (emphasis added).  Under EPA's regulations, EPA must disapprove a state water quality standard if it is inconsistent with any of the eight factors listed in 40 C.F.R. § 131.5(a).  *See* 40 C.F.R. §§ 131.5(b), 131.6, 131.21(b).  In addition to whether a state standard includes criteria that protect the designated uses of the State's waters, those factors include a "[c]ertification by the State Attorney General or other appropriate legal authority within the State that the water quality standards were duly adopted pursuant to State law."  *Id.*

Page 11 -   **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

§ 131.6(e); *see id.* § 131.5(a)(8). To OWQSG's knowledge, there is no such certification for DEQ's waterbody-specific applications of the NCC, nor could such a certification be made following EPA's disapproval of the NCC. Without the NCC, DEQ has no authority under state law to adopt waterbody-specific temperature criteria based on its determination of natural temperatures, and, as discussed in the preceding paragraph, DEQ has no other authority to adopt water quality standards for temperature.[9]

Because EPA could disapprove DEQ's waterbody-specific applications of the NCC based on DEQ's current lack of legal authority to apply the NCC, there is no legal or practical reason to require EPA to evaluate all the approval factors listed in 40 C.F.R. § 131.5(a)—if, contrary to the argument above, there is any authority or need for EPA's review at all. Moreover, because of the EPA and DEQ resources that would be needed to undertake a detailed evaluation of the protectiveness of each waterbody-specific application of the NCC, there are also ample practical reasons not to require that evaluation.

**B.    The Klamath Basin Temperature TMDL cannot legally remain in effect pending any action by EPA on remand because EPA has never approved the TMDL.**

Plaintiff seeks the following remedy for its Eighth Claim:

> [T]he Court grants EPA's motion for voluntary remand on the Klamath Basin temperature TMDL . . . . [That] TMDL shall stay in place and will not be vacated. EPA and Oregon shall establish or approve . . . a new Klamath Basin temperature TMDL by April 11, 2019, covering the same waters as the TMDLs at issue in this case.

Plaintiff's Proposed Judgment Including Vacatur at 4 (Dkt. No. 158-1); Plaintiff's Proposed Judgment Without Vacatur at 5 (Dkt. No. 158-2). OWQSG joins EPA's arguments regarding Plaintiff's proposed remedy. EPA's Brief at 32-33. In addition, OWQSG notes that, unlike the

---

[9] Again, although the EQC has not formally repealed the NCC, OAR 340-041-0028(8), EPA's disapproval of the NCC means that it cannot be used for any purpose under the CWA, including establishing waterbody-specific temperature criteria.

Page 12 -    **INTERVENOR-DEFENDANT OREGON WATER QUALITY STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S OPENING BRIEF ON REMEDIES**

other TMDLs at issue in this case, EPA has never approved the Klamath Basin Temperature TMDL. In order to be effective under the CWA, a state TMDL must be approved by EPA. *See* 33 U.S.C. § 1313(d)(2). Therefore, the Klamath Basin Temperature TMDL cannot "stay in place" or otherwise remain in effect pending EPA's action on remand.[10]

## IV.  CONCLUSION

For the foregoing reasons and the reasons stated in EPA's Brief, Plaintiff's requested remedy should be denied. The remedy should be limited to a declaratory judgment and a remand of the TMDLs to EPA consistent with the Court's April 11, 2017 Order. With reference to the specific issues addressed in this brief, the remedy should not include an unnecessary and legally unauthorized requirement for EPA to review pursuant to CWA subsection 303(c) each and every waterbody-specific application of the now-disapproved NCC. In addition, the Klamath Basin Temperature TMDL cannot remain in effect pending remand, as Plaintiff requests, because EPA has never approved that TMDL.

DATED:  March 16, 2018.          STOEL RIVES LLP

*s/Beth S. Ginsberg*
BETH S. GINSBERG, OSB No. 070890
MICHAEL R. CAMPBELL, OSB No. 870016

Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  (206) 386-7581
Facsimile:  (206) 624-0900
Email:  beth.ginsberg@stoel.com
Email:  michael.campbell@stoel.com

*Attorneys for Oregon Water Quality Standards Group*

---

[10] Plaintiff suggests that the Court's order regarding the Klamath Basin Temperature TMDL should not be directed to Oregon, but should be directed to EPA to either establish a TMDL or to approve or disapprove a TMDL established by Oregon. Plaintiff's Brief at 34. If, contrary to EPA's arguments, the Court orders specific actions on remand, OWQSG agrees with Plaintiff that the order should be directed to EPA, rather than Oregon, in order to align the order with CWA subsection 303(d)(2), 33 U.S.C. § 1313(d)(2).

Page 13 -   INTERVENOR-DEFENDANT OREGON WATER QUALITY
            STANDARDS GROUP'S BRIEF IN OPPOSITION TO PLAINTIFF'S
            OPENING BRIEF ON REMEDIES

96230440.2 0034266-00004