ELLEN F. ROSENBLUM
Attorney General
FRANK HAMMOND #852239
SCOTT KAPLAN #913350
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Frank.Hammond@doj.state.or.us
Email: scott.kaplan@doj.state.or.us

    Attorneys for State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, a non-profit corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, a United States Government Agency,<br><br>        Defendant,<br><br>    v.<br><br>STATE OF OREGON, OREGON WATER QUALITY STANDARDS GROUP, and FRESH WATER TRUST<br><br>        Intervenor-Defendants | Case No. 3:12-cv-01751-AC<br><br><br>SECOND DECLARATION OF EUGENE P. FOSTER REGARDING REMEDIES |

Page 1 -   SECOND DECLARATION OF EUGENE P. FOSTER REGARDING REMEDIES
    FH/cre/8818565-v1

I, Eugene P. Foster, declare:

## I.    Introduction.

1.    Existing Oregon temperature total maximum daily loads (TMDLs) should not be vacated because their implementation provides water quality benefits to sensitive beneficial uses. Vacating these TMDLs while new TMDLs are being developed would leave a void in DEQ's program and damage agency efforts to achieve better water quality and to protect sensitive species. As explained below, these temperature TMDLs should remain in place until replacement temperature TMDLs can be developed.

## II.    Responsibilities and knowledge.

2.    I am the manager of the Watershed Management Section in the Environmental Solutions Division of the Oregon Department of Environmental Quality (DEQ). I have served in the position for ten years. In this position, I am responsible for direct management of water quality analysts, water quality modelers, nonpoint source specialists, TMDLs and nonpoint source policy specialists. I have statewide responsibility for the TMDL and Nonpoint Source Programs. I have a Bachelor of Science in Fisheries and Wildlife from University Missouri-Columbia and a Ph.D. in Toxicology from Oregon State University. I teach Ecological Toxicology, Water Quality Policy and Management, and advise graduate students at Portland State University. I have over 30 years of experience working in the environmental field and have given seminars on toxicology and water quality management nationally and internationally.

3.    Part of my duties at DEQ involve participating in and supervising the development of TMDLs. This includes working on the organization, review, and analysis of information collected for the purpose of developing TMDLs. My duties at DEQ also include maintaining a familiarity with state and federal laws governing DEQ's development and implementation of its water quality standards and the development of TMDLs. The statements below reflect information and knowledge that I have acquired as a result of the execution of my duties at DEQ during the normal course of business.

Page 2 -    SECOND DECLARATION OF EUGENE P. FOSTER REGARDING REMEDIES
FH/cre/8818565-v1

III.    **The temperature TMDLs are important to DEQ's nonpoint source and permitting programs. Vacating them would remove an essential link in those programs, potentially endangering sensitive species.**

4.      The temperature TMDLs should remain in place and continue to be implemented until replacement temperature TMDLs have been issued and approved by EPA because the TMDL allocations are used to limit the effect of the nonpoint and point sources on stream temperature. The TMDL allocations are implemented through TMDL Implementation Plans (IPs) for nonpoint sources and effluent limits in NPDES permits for point sources.   Examples of point sources include industrial facilities and municipal wastewater treatment plants.   Examples of nonpoint sources include agricultural runoff and other diffuse sources. The TMDLs allocate pollution, in this case, thermal pollution, from both point and nonpoint sources by limiting inputs from anthropogenic sources to insignificant increases in temperature. In doing this the TMDLs help to protect threatened and endangered salmonids. Importantly, the TMDLs are DEQ's *only* mechanism for reducing inputs for many nonpoint sources. The temperature TMDLs allocate the Human Use Allowance of 0.3C (OAR340-041-0028(12)(b)(B)), which Oregon's Environmental Quality Commission determined to be an insignificant increase in temperature and therefore not a reduction in water quality (OAR340-041-0004(3)(c)).   This limits point sources and nonpoint sources to no more than a cumulative 0.3C increase in temperature from all anthropogenic sources covered by the temperature TMDL, which benefits the environment and sensitive species such as salmonids. If the TMDLs are vacated during the time it takes to develop replacements, these protections will in many cases be lost.

5.      As explained my first Declaration, there were 243 Designated Management Agencies (DMAs) such as federal and state agencies, cities and counties or other Responsible Persons ("RPs") named in the temperature TMDL Water Quality Management Plans (WQMP), the framework for TMDL implementation. Many of these DMAs and RPs were required to develop and submit TMDL IPs because they had control or authority over nonpoint sources. The TMDL IPs are detailed plans that the WQMP requires a DMA to develop. The TMDLs and

Page 3 -   SECOND DECLARATION OF EUGENE P. FOSTER REGARDING REMEDIES
FH/cre/8818565-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

WQMPs thus compel DMAs to take actions that they might not otherwise have undertaken and would not otherwise be required.  For example, there was a decision made by Benton County that a riparian code that protects existing vegetation that provides shade for meeting the TMDL allocation would only be adopted by the County for those parts of the County affected by the Willamette temperature TMDL (2006) and exclude those areas of the County outside of the coverage area of the TMDL.[1]  The County would initiate a regulatory component prohibiting the removal of riparian vegetation if DEQ determined that the County's voluntary riparian program does not meet performance goals.  Then the County would adopt a riparian protection ordinance but only for those areas affected by the Willamette TMDL.  There are other examples of DMAs that were compelled by the TMDL to adopt riparian ordinances as part of their TMDL IPs.

IV. **Without the TMDLs some point sources would have higher effluent limits, resulting in increased loads to waters now covered by the TMDLs.**

6.    DEQ's water quality permitting policy document, Implementation of Water Quality Standards for Temperature in NPDES Permits (WQP-007; July 12, 2017), identifies the policy for developing effluent limits when the receiving stream is impaired for temperature and there is a TMDL based on natural conditions criteria (or natural thermal potential).  Because of the Court's ruling, for permit renewals, permit writers will determine the thermal loads that are consistent with TMDL waste load allocations and compare it to the thermal loads based on biologically based numeric criteria (BBNC) in the temperature water quality standard with the human use allowance of $0.3°C$ (pre-TMDL standard) (see OAR 340-041-0028(12)(b)(A)).  The more stringent of the two loads is applied in the permit.  Again, DEQ needs the TMDLs to stay in place in order to implement these allocations.

7.    An analysis performed by DEQ for the City of Wilsonville's wastewater treatment plant discharge to the Willamette River that had received a waste load allocation

---

[1] *See* www.co.benton.or.us/cd/page/riparian-and-wetlands-project-maps-and-figures, for an inventory of lands within the scope of the Willamette TMDL where the County focused its efforts.

Page 4 -    SECOND DECLARATION OF EUGENE P. FOSTER REGARDING REMEDIES
            FH/cre/8818565-v1

(WLA) in the Willamette temperature TMDL illustrates the importance of not vacating the TMDLs for purposes of permitting.  DEQ's analysis showed that the effluent thermal load would be 175 million kilocalories/day using the pre-TMDL standard.  However, the effluent thermal load based on the temperature WLA in the existing TMDL would be 39 million kilocalories/day.  Therefore, for this NPDES permitted point source the allowable effluent thermal load would be larger if the temperature TMDL was vacated and the option of using the stricter WLA was removed.

**V.      To avoid these harms, the Court should delay vacating the TMDLs to allow development of replacements.**

8.      As described in the examples provided, the TMDLs provide important water quality benefits and should be kept in place while replacements can be developed.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on March 16, 2018.

EUGENE P. FOSTER

Page 5 -    SECOND DECLARATION OF EUGENE P. FOSTER REGARDING REMEDIES
FH/cre/8818565-v1