IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NORTHWEST ENVIRONMENTAL ADVOCATES,

    Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

    Defendant.

STATE OF OREGON, OREGON WATER QUALITY STANDARDS GROUP, and THE FRESHWATER TRUST,

    Intervenor Defendants.

No. 3:12-cv-01751-AC

OPINION & ORDER

Bryan J. Telegin
Bricklin & Newman, LLP
1424 Fourth Avenue, Suite 500
Seattle, WA 98101

Allison Michelle LaPlante
Earthrise Law Center
10015 SW Terwilliger Boulevard
Portland, OR 97219

    Attorneys for Plaintiff

1 – OPINION & ORDER

Kent E. Hanson
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044

Clifford E. Stevens, Jr.
United States Department of Justice
Environment & Natural Resources Division
Ben Franklin Station
P.O. Box 7369
Washington D.C. 20044

John H. Martin, III
United States Department of Justice
999 18th Street, South Terrance Suite 370
Denver, CO 80202

    Attorneys for Defendant

G. Frank Hammond
Oregon Department of Justice
Trial Division
1162 Court Street
Salem, OR 97301

    Attorneys for Intervenor Defendant State of Oregon

Beth S. Ginsberg
Stoel Rives, LLP
600 University Street, Suite 3600
Seattle, WA 98101

Michael R. Campbell
Stoel Rives, LLP
900 SW 5th Avenue, Suite 2600
Portland, OR 97204

    Attorneys for Intervenor Defendant Oregon Water Quality Standards Group

Thane W. Tienson
Landye Bennett Blumstein, LLP
1300 SW 5th Avenue, Suite 3600
Portland, OR 97201

Brooks M. Smith
Troutman Sanders, LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219

Roman D. Hernandez
Troutman Sanders, LLP
100 SW Main Street, Suite 1000
Portland, OR 97204

               Attorneys for Intervenor Defendant The Freshwater Trust

HERNÁNDEZ, District Judge:

This matter comes before the Court on Plaintiff Northwest Environmental Advocates' (NWEA) Opening Brief on Remedies [158] following this Court's grant of summary judgment to Plaintiff on April 11, 2017. *See* Order [149], Findings & Recommendations [132, 133]. Defendant EPA filed a Brief in Opposition to Plaintiff's Brief [162]. Intervenor Defendants the State of Oregon [172], Oregon Water Quality Standards Group [168], and The Freshwater Trust (TFT) [170] also filed memoranda in opposition to Plaintiff's Opening Brief on Remedies. Plaintiff filed a consolidated Reply Brief [179].

On September 11, 2018, the Court heard oral argument on the remedies issues before the Court. At the conclusion of that hearing the Court took the matter under advisement.

## BACKGROUND

In its Second Amended Complaint [11] Plaintiff brought claims against EPA under the Administrative Procedure Act (APA) as well as under the citizen-suit provisions of the Clean Water Act (CWA) and the Endangered Species Act (ESA) on the basis that EPA unlawfully approved Total Maximum Daily Loads (TMDLs) submitted by the State of Oregon for various

river systems around the state.[1] In particular, Plaintiff asserts EPA unlawfully approved the TMDLs submitted by Oregon even though the TMDLs were not designed to meet all applicable water quality standards (WQS) for those water bodies and EPA did not review the superseding WQS contained in the TMDLs as required by § 303(c) of the CWA. 33 U.S.C. § 1313(c). Plaintiffs also alleged EPA violated § 7 of the ESA when it approved the TMDLs without first determining whether such approval may affect species listed as threatened or endangered under the ESA or, if so, consulting with the U.S. Fish & Wildlife Service (USFWS) or the National Marine Fisheries Service (NMFS) to determine whether the TMDLs will jeopardize any listed species or adversely modify any critical habitat. *See* 16 U.S.C. § 1536.

At the heart of Plaintiff's claims is EPA's 2004 approval of new WQS for temperature that apply to numerous river systems and water bodies around Oregon. The 2004 WQS contained numeric temperature criteria that were designed to ensure the temperature of the relevant water bodies met the biological needs of various salmonids at various life stages. The 2004 WQS, however, also contained narrative criteria known as the "natural conditions criteria" (NCC), which provide:

> Where the [Oregon Department of Environmental Quality] determines that the natural thermal potential of all or a portion of a water body exceeds the biologically-based criteria . . . the natural thermal potential temperatures supersede the biologically-based criteria, and are deemed to be the applicable temperature criteria for that water body.

Or. Admin. R. 340-041-028(8) (2015). The NCC allowed for higher water temperatures than the biologically-based criteria in most waterbodies and systems relevant to this case, and in at least

---

[1] In this Opinion and Order the Court provides only the background necessary to address the remedies issues currently before the Court. For a full background, see the Court's April 11, 2017 Order [149] and Findings & Recommendations [132, 133].

4 – OPINION & ORDER

some instances the NCC-based temperature criteria were substantially higher than the biologically-based criteria.

Between 2004 and 2010, the Oregon Department of Environmental Quality submitted temperature TMDLs for numerous river systems and water bodies throughout Oregon for EPA approval. These TMDLs were based on the NCC, and, therefore, in many circumstances allowed for water temperatures that exceeded the temperatures permitted by the biologically-based criteria.

In 2012, however, a court in this District struck down the NCC because EPA impermissibly adopted it as narrative criteria that supplanted (rather than supplemented) numerical criteria, and because the adoption of the NCC was arbitrary and capricious. *Nw. Envtl. Advocates v. U.S. Envtl. Prot. Agency*, 855 F. Supp. 2d 1199, 1207 (D. Or. 2012). Plaintiff then brought this action in which it primarily challenged the approval of the NCC-based temperature TMDLs because they were not designed to effectuate the applicable criteria and because EPA approved the TMDLs without conducting review under § 7 of the ESA.

As noted, on April 11, 2017, this Court issued Order [149] in which it adopted in part and declined to adopt in part Findings & Recommendation [132] and adopted Findings & Recommendation [133]. By doing so, the Court granted Plaintiff's Motion for Summary Judgment [78] with regard to Plaintiff's Claims One and Two (Plaintiff's CWA claims) and Six and Seven (Plaintiff's ESA claims),[2] and denied Plaintiff's Motion as moot as to Claims Three, Four, and Five.

---

[2] The Court entered summary judgment in favor of Plaintiff on Claims One, Six, and Seven only as to the TMDLs approved by EPA on or after September 27, 2006, because the portions of those claims related to TMDLs approved before September 27, 2006, were barred by the relevant statute of limitations. *See* Order [149], at 6–7, 24. By its terms Plaintiff's Claim One applied only to TMDLs approved on or after September 27, 2006. Pl.'s Second Am. Compl. [11], at ¶ 85 n.10.

5 – OPINION & ORDER

The Court also granted EPA's Motion for Voluntary Remand [89] and, as a result, remanded the Willamette Basin mercury TMDL and the Klamath Basin temperature TMDL to EPA, but directed that those TMDLs "should be left in place" pending EPA and Oregon submitting replacement TMDLs within two years of the Court's Order. *See* Order [149], at 24.

DISCUSSION

As a result of the Court's entry of summary judgment, Plaintiff seeks an order (1) vacating the TMDLs relevant to Claim One, (2) directing EPA to disapprove the Claim One TMDLs under § 303(d) of the CWA, (3) requiring EPA to review the NCC under § 303(c) of the CWA, and (4) directing EPA to consult with the USFWS and/or NMFS under § 7 of the ESA regarding whether the NCC will jeopardize any listed species or adversely modify any critical habitat. EPA opposes Plaintiff's request and instead insists the Court should remand the TMDLs to EPA without vacatur and permit EPA and the State of Oregon to resubmit new TMDLs within 12 years of entry of judgment. The State of Oregon joins EPA's position. The Intervenor Defendants also oppose Plaintiff's request for vacatur of the TMDLs, and instead ask the Court to leave the TMDLs in place while the State and EPA undertake the development of new TMDLs.

I. **Vacatur of the NCC-based TMDLs**

Plaintiff first seeks vacatur of the NCC-based TMDLs relevant to Claim One. In Claim One Plaintiff brings a claim under the APA in which it asserts EPA's approvals of the NCC-based TMDLs were arbitrary, capricious, and not in accordance with the CWA or the APA because the TMDLs were not calculated to attain the biologically-based numerical temperature

---

Accordingly, the Court also granted summary judgment to EPA on Claims Six and Seven to the extent those claims were based on TMDLs approved before September 27, 2006. *Id.* at 24. The Court's grant of summary judgment to Plaintiff on Claim Two was not so limited. Order [149], at 6–7, 24.

criteria. As noted, the Court granted summary judgment to Plaintiff on Claim One, which applied only to TMDLs approved on or after September 27, 2006.[3]

The Court "order[s] remand without vacatur only in 'limited circumstances.'" *Pollinator Stewardship Council v. Envtl. Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015) (quoting *Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012)). The Court will "leave an invalid rule in place only 'when equity demands'" that it does so. *Id.* (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)). When determining whether to leave an agency action in place on remand, the Court must "weigh the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed.'" *Id.* (quoting *Cal. Cmties. Against Toxics*, 688 F.3d at 992).

With respect to the first prong of this analysis, the Court, in making this assessment, "look[s] at whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Id.* As to the second prong, the Court looks to "whether vacating a faulty rule could result in possible environmental harm," and, if so, the Court may choose to leave the rule in place. *Id.* The second factor, however, "is weighty only insofar as the agency may be able to rehabilitate its rationale for the regulation." *Comcast Corp. v. Fed. Commc'ns Comm'n*, 579 F.3d 1, 9 (D.C. Cir. 2009). Because vacatur of the TMDLs relevant to Claim One is the ordinary remedy, the Court concludes EPA bears the burden of demonstrating vacatur is inappropriate.

---

[3] The following temperature TMDLs were approved on or after September 27, 2006: Willamette Basin TMDL; Umatilla Basin, Willow Creek Subbasin TMDL; Umpqua Basin TMDL; Rogue Basin, Middle Rogue Basin, and Bear Creek Watershed TMDL; Willamette Basin, Molalla Pudding Subbasin TMDL; Rogue Basin; Middle Columbia/Hood, Miles Creek Subbasin; Grande Ronde, Lower Grande Ronde Subbasin; Malheur Basin; and John Day Basin.

7 – OPINION & ORDER

*See Ctr. for Envtl. Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("[G]iven that vacatur is the presumptive remedy for a procedural violation such as this, it is Defendants' burden to show that vacatur is unwarranted.").

With respect to the first factor, the Court concludes EPA's errors are serious. At the outset, the Court notes it is undisputed that the NCC-based TMDLs allow for higher temperatures than the biologically-based criteria. In many instances, the NCC-based criteria allow for significantly higher temperatures than the biologically-based criteria.

Rather than focus on the baseline temperatures allowed under the NCC-based TMDLs, EPA and the State contend the practical differences between the NCC-based TMDLs and the temperatures permitted by the biologically-based criteria are modest or nonexistent. For this argument EPA and the State rely on the human use allowance (HUA), under which human uses may cause water temperatures to exceed the relevant temperature limit (whether biologically-based or NCC-based) by only 0.3° C. Because those human uses include all point sources and nonpoint sources, EPA and the State contend the regulation of those sources is functionally controlled by the 0.3° C HUA, not by the baseline temperature threshold.

The purpose of TMDLs, however, is not merely to set a cap on anthropogenic sources of pollution in a vacuum; the statutory purpose of TMDLs is to bring waters into compliance with the applicable criteria. *See* 33 U.S.C. 1313(d)(1)(C). It is uncontested that the applicable criteria in this instance are the biologically-based criteria. To assess the seriousness of the EPA's errors by focusing only on the 0.3° C HUA while ignoring the baseline temperature criteria, therefore, would undermine the central purpose of the TMDL program.

Moreover, the temperature TMDLs do much more than simply set the extent to which point and nonpoint sources can raise water temperatures in the relevant river systems. As Intervenor-Defendant TFT explains:

> TMDLs provide vitally important information on where the temperature exceedances are the most severe, the sources of those exceedances, and options for addressing those exceedances, including quantified comparisons; they provide in-depth analyses of current riparian vegetation conditions and how revegetation with accompanying shade could mitigate the exceedances; they evaluate channel morphology and complexity and identify measures for providing or enhancing cold water refugia; and they comprehensively address other watershed dynamics that influence impairment and attainment of water quality criteria (regardless of which criteria are applied).

TFT's Br. in Opp'n to Pl.'s Mot. for Summary J. on Remedy [170], at 5. As such, TFT points out that the "TMDLs are valuable for TFT's on-the-ground restoration work, enabling TFT to target areas and practices that have the greatest and most durable impact on improving water quality." *Id.* at 7. The difference between the NCC-based TMDLs and TMDLs appropriately designed to lead to the attainment of the applicable biologically-based criteria, therefore, could affect on-the-ground restoration and rehabilitation efforts because it could lead to the misprioritization of projects and the misallocation of state, municipal, and nongovernmental resources. Moreover, it stands to reason that if the TMDLs carried with them more stringent temperature requirements, the TMDL-driven restoration and rehabilitation projects would have to be more aggressive to ensure the river systems attain the applicable criteria.

As relevant to Claim One the TMDLs are not defective because the agency provided inadequate rationale or because the agency missed a necessary procedural step, but instead because the substance of the TMDLs violate the CWA because they are not designed to ensure attainment of the applicable criteria. The flaws in the TMDLs, therefore, are so fundamental that it is impossible "that the same rule would be adopted on remand." *Pollinator Stewardship*

*Council*, 806 F.3d at 532. Accordingly, on this record the Court concludes EPA's errors are serious and, accordingly, finds the first factor weighs in favor of vacating the relevant TMDLs.

The Court notes the importance of the second factor, the disruptive consequences of an interim change, is diminished because EPA will be unable to rehabilitate its rationale on remand. *Comcast Corp.*, 579 F.3d at 9. In any event, after a review of the record the Court remains uncertain what practical effect the vacatur of the relevant TMDLs would have on the relevant river systems. Although, as noted, TFT asserts vacatur would deprive it and others of valuable information used to target rehabilitation and restoration projects, Plaintiff fairly points out that the TMDLs could still be used for that purpose in the interim even if they were vacated and lacked legal effect. Accordingly, the Court finds the disruptive consequences of vacating the relevant TMDLs are uncertain and, as a result, cannot overcome the seriousness of the agency's errors. On this record, therefore, the Court finds the legal requirements for vacatur are met.

The uncertain regulatory environment that would result from the immediate vacatur of the TMDLs, however, gives the Court pause. Accordingly, the Court is willing to entertain a stay of vacatur for a reasonable period to permit the State to submit and EPA to approve or establish TMDLs that are designed to effectuate the applicable, biologically-based criteria.

It would be an understatement, however, to say the parties differ on the period necessary to complete that task. Drawing its inspiration from the statutory period permitted for EPA to review, approve or disapprove, and, if necessary, establish its own TMDLs, Plaintiff requests this Court order the State and EPA to complete new TMDLs within 120 days of the issuance of this Order. Candidly, however, Plaintiff acknowledges it is not realistic to expect EPA to meaningfully replace the TMDLs within 120 days.

The State and EPA, on the other hand, have repudiated any effort to revive the NCC as it existed in the relevant TMDLs and now insist they require 12 years to conduct extensive study, to gather data, to reassess the relevant criteria, and, if necessary, to formulate new TMDLs. The Court finds it would be manifestly unreasonable to give the EPA and the State a 12-year blanket timeline to complete this work. In addition to the facial unreasonableness of such a request, the Court notes the State and EPA previously agreed the Willamette mercury TMDL and the Klamath temperature TMDL could be revised within two years. Clearly it will not take the State and EPA 12 years to reformulate any or all of the TMDLs relevant to Claim One.

Moreover, the Court notes at least some of the work that it appears the State and EPA plan to undertake during their proposed 12-year remand period is beyond the scope of remedying the errors relevant to this case. In particular, although the State and EPA may intend to revisit the relevant temperature criteria, doing so is not necessary to remedy the errors that Plaintiff has established in this case. At present, the State and EPA are required to formulate TMDLs that are designed to effectuate the applicable, biologically-based criteria.

The Court, therefore, encourages the parties to confer and to formulate a TMDL-by-TMDL schedule for the State and EPA to establish new TMDLs that implement the applicable, biologically-based criteria. The Court directs the parties to submit their proposal(s) to the Court no later than March 11, 2019. If necessary, the Court will schedule an additional hearing to resolve any remaining disputes.

## II. Disapproval of the Current TMDLs

Plaintiff also seeks an order directing EPA to disapprove the TMDLs relevant to Claim One. Plaintiff contends disapproval of those TMDLs is required by the CWA because this Court

has established that the TMDLs are not designed to implement the applicable WQS. *See* 33 U.S.C. § 1313(d)(2).

Plaintiff is correct that disapproval of the Claim One TMDLs is a necessary outgrowth of this Court's conclusion that the TMDLs are not designed to implement the applicable criteria. Accordingly, Plaintiff is entitled to an order directing EPA to disapprove the TMDLs.

As with vacatur, however, the Court is willing to entertain a stay of that order to allow the State and EPA reasonable time to establish new TMDLs designed to implement the applicable, biologically-based criteria before the Court requires EPA to disapprove the existing TMDLs.

### III. Review of the NCC as Submitted in the TMDLs under § 303(c) of the CWA

Plaintiff also seeks an order directing EPA to review the NCC-based TMDLs pursuant to § 303(c) of the CWA. *See* 33 U.S.C. § 1313(c). Plaintiff seeks this order as a remedy stemming from the entry of summary judgment in favor of Plaintiff's on Claim Two, the claim Plaintiff brought pursuant to the citizen-suit provision of the CWA on the basis that the NCC-based TMDLs established new or revised WQS, and, therefore, EPA must review the TMDLs under § 303(c).

As noted, Plaintiff's Claim Two was not limited to those TMDLs approved on or after September 27, 2006. With respect to the TMDLs relevant to Claim One, however, there is no longer any purpose to review of the NCC under § 303(c) because those NCC-based TMDLs are going to be vacated, disapproved, and replaced with TMDLs that implement the biologically-based criteria. With respect to the pre-September 27, 2006, TMDLs, however, Plaintiff is correct that EPA has a nondiscretionary duty under § 303(c) to review the WQS contained in the TMDLs, and this Court has concluded that EPA failed to do so. Accordingly, consistent with

§ 303(c)(2)(B), EPA must review the NCC as contained in the pre-September 27, 2006, TMDLs within 60 days of the entry of judgment in this case, and, if EPA determines those TMDLs should be disapproved as a result, it must do so within 90 days.

The Court acknowledges, however, that the State and EPA have repudiated the NCC as it was established in 2004 and as it exists within the TMDLs relevant to this case, and intends to establish new WQS at some point in the future. In light of that decision, although legally required, review of the NCC as contained in the pre-September 27, 2006, TMDLs may not serve any useful purpose, and may, in fact, only lead to further litigation. If the State and EPA prefer, therefore, the Court will permit EPA to forego the 60-day review of the NCC as contained in those TMDLs and instead to include those TMDLs in the process that the Court implements for the Claim One TMDLs; that is, if EPA and the State so prefer the Court will issue an order directing EPA to disapprove the pre-September 27, 2006, TMDLs pursuant to § 303(c), but will stay that order pursuant to a schedule set by the Court after conferral among the parties to permit the State and EPA to establish new TMDLs that implement the applicable, biologically-based criteria within a reasonable time.

### IV. ESA Review of the NCC

Plaintiff next contends it is entitled to an order directing EPA to "ensure those criteria will not cause jeopardy to, or adversely modify the critical habitat of, ESA-listed species" if EPA approves "any revised criteria in the TMDLs." Pl.'s Opening Br. on Remedies [158], at 18. In addition, Plaintiff seeks an order directing "EPA to conclude its Section 7 duties before it approves the new criteria, within the same 90-day period that applies under CWA Section 303(c)." *Id.*

The TMDLs covered by Plaintiff's ESA claims (Claims Six and Seven) are also covered under Claim One because Plaintiff was only awarded summary judgment on Claims Six and Seven as relevant to TMDLs approved on or after September 27, 2006. *See* Order [149], at 24. The Court concludes it would not be useful to direct EPA to now conduct § 7 review of TMDLs that the Court has already ordered to be replaced within a reasonable time. The reformulation of the TMDLs to be based on the biologically-based criteria will directly remedy the ESA problems that Plaintiff established in this case. As this Court explained in its April 11, 2017, Order, the TMDLs were "agency actions" that triggered § 7 review because the TMDLs established new or revised WQS when they were based on the NCC rather than the applicable biologically-based criteria. *See* Order [149], at 8–13. When the TMDLs are reformulated to implement the applicable biologically-based criteria, they will no longer establish new or revised criteria, and, therefore, that review will no longer be necessary.

Accordingly, the Court need not direct any additional remedial action with respect to Plaintiff's ESA claims because the remedy for Claim One will redress the violation that Plaintiff established in Claims Six and Seven.

## V. Willamette Basin Mercury TMDL and Klamath Basin Temperature TMDL

Finally, Plaintiff seeks an order directing "EPA to either establish or approve a revised Willamette mercury TMDL, and to either establish or approve a Klamath temperature TMDL, by April 11, 2019." Pl.'s Opening Br. on Remedies [158], at 34. EPA objects to the Court setting a deadline at least as to the Klamath temperature TMDL because the timing of EPA's approval or establishment of a new TMDL is contingent on the timing of the State's submission of the TMDL to EPA.

The Magistrate Judge's October 12, 2016, Findings & Recommendations provided "EPA and Oregon should submit a revised Willamette mercury TMDL and Klamath temperature TMDL within two years of the adoption of this Findings and Recommendation (if any) by the Article III Judge." Findings & Recommendations [133]. Neither EPA nor the State objected to the deadline contained in the Findings & Recommendations, and after review this Court adopted that deadline on April 11, 2017. *See* Order [149], at 22–24. The Court, therefore, has already ordered that the State and EPA establish the new Willamette mercury and Klamath temperature TMDLs no later than April 11, 2019.

The Court finds EPA has failed to establish a basis to change the Court's Order at this late stage of the proceedings. To the extent that EPA could not commit to meeting the April 11, 2019, deadline on account of its inability to affect the State's participation in the formulation of those new TMDLs, EPA knew of that limitation at the time that the Magistrate Judge issued the Findings & Recommendations and could have objected to the timeline then. The Court will not permit EPA to belatedly object to the two-year deadline almost a year after that deadline was established.[4]

Accordingly, on this record the Court adheres to its order directing the State and EPA to establish the revised Willamette mercury TMDL and Klamath temperature TMDL no later than April 11, 2019.

CONCLUSION

For these reasons, with respect to the TMDLs relevant to Claim One, the Court directs the parties to confer and, **no later than March 11, 2019**, to submit to the Court a single, joint status report that sets out the parties' proposal(s) for a schedule by which the State and EPA will

---

[4] EPA first objected to the establishment of the two-year deadline on February 16, 2018, when it filed its Memorandum in Opposition to Plaintiff's Opening Brief on Remedies [162].

establish replacement TMDLs that implement the applicable, biologically-based criteria. In addition, the Court directs EPA to disapprove the TMDLs relevant to Claim One, subject to the Court's willingness to consider a stay of that order pursuant to the above-referenced schedule for issuing replacement TMDLs.

With respect to Claim Two, consistent with § 303(c)(2)(B) the Court directs EPA to review the TMDLs covered by Claim Two but not already included in Claim One within 60 days of entry of judgment in this case. If EPA determines the NCC as contained in those TMDLs should be disapproved, it must do so within 90 days of entry of judgment. In the alternative, as described more fully above, if the State and EPA agree to include the TMDLs included in Claim Two in the procedure outlined for Claim One, the Court will relieve EPA of its § 303(c) review obligations and instead direct the State and EPA to disapprove the Claim Two TMDLs, but stay that order for a period to be determined by a schedule set by the Court after conferral among the parties.

With respect to Plaintiff's ESA claims (Claims Six and Seven), the Court finds the remedy on Claim One will redress the violation that Plaintiff established in Claims Six and Seven. Finally, the Court adheres to its order directing the State and EPA to establish the revised Willamette mercury TMDL and Klamath temperature TMDL no later than April 11, 2019.

IT IS SO ORDERED.

DATED this 12 day of December, 2018.

/s/ Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge