BRYAN TELEGIN, OSB # 105253
Bricklin & Newman, LLP
1424 4th Ave., Ste. 500
Seattle, WA 98101
Tel: (206) 264.8600
Fax: (206) 264.9300
Email: telegin@bnd-law.com

ALLISON LaPLANTE, OSB # 023614
Earthrise Law Center
10101 S. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6894
Fax: (503) 768-6642
Email: laplante@lclark.edu

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, an Oregon non-profit corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, a United States Government Agency,<br><br>        Defendant,<br><br>   and | Civil No.: 3:12-cv-01751-HZ<br><br>**DECLARATION OF BRYAN TELEGIN IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS** |

DECLARATION OF BRYAN TELEGIN – Page 1

STATE OF OREGON; OREGON WATER
QUALITY STANDARDS GROUP; and THE
FRESHWATER TRUST,

           Intervenors-Defendants.

I, BRYAN TELEGIN, declare as follows:

1. I am a partner at the law firm of Bricklin & Newman, LLP, in Seattle, counsel for the plaintiff Northwest Environmental Advocates ("NWEA"). I have been a member in good standing of the Oregon Bar since 2010 and the Washington Bar since 2013. I am also a member of the bars of the United States District Court for the District of Oregon, the Eastern and Western Districts of Washington, and the Ninth Circuit. I make this declaration based upon my own personal knowledge and am competent to testify thereto.

2. I earned my J.D. from Lewis & Clark Law School, *magna cum laude*, in 2010 with a certificate in environmental and natural resources law. I graduated in the top 6% of my class and, upon receiving my J.D., I was selected by the faculty for induction into Lewis & Clark's Cornelius Honor Society. I hold a bachelor's degree, with highest honors, and a master's degree in philosophy from the University of California, Santa Cruz.

3. Before joining Bricklin & Newman in 2012 as an associate attorney, I was a contract attorney for the Earthrise Law Center (formerly the Pacific Environmental Advocacy Center of Lewis & Clark Law School), and for the Friends of the Columbia Gorge, a public interest environmental organization dedicated to the protection and preservation of the Columbia River Gorge National Scenic Area. At Earthrise, I mentored law students and represented several nonprofit environmental organizations in federal and state court litigation arising under the Clean Water Act ("CWA"), the National Environmental Policy Act ("NEPA"), and the Endangered Species Act ("ESA"). At Friends of the Columbia Gorge, I assisted in litigation arising under the

Columbia River Gorge National Scenic Area Act, and engaged in extensive motions practice in a complex, two-year administrative adjudication before the Washington Energy Facility Site Evaluation Council.

4. At Bricklin & Newman—both as an associate attorney and now, as a partner—I have continued to represent nonprofit environmental organizations, tribes, and neighborhood groups in a wide variety of federal court cases arising under the CWA, the ESA, and other federal environmental statutes. Similarly, I have represented nonprofit organizations, neighborhood groups, and other individuals in many state court cases and agency adjudications involving land use and environmental protection matters. These cases have ranged from smaller agency adjudications before city and county hearing examiners, to complex litigation before state-level agencies such as Washington's Growth Management and Shorelines Hearings Boards. Many of these state-level cases have involved issues of water quality protection and compliance with local, state, and federal environmental regulations, including the federal CWA and ESA. Overall, about a third of my case load over the last ten years has consistently involved federal litigation arising under the CWA and/or ESA. Much of the rest of my case load has involved these statutes indirectly, as they are applied at the state and local level.

5. In all, my experience with federal environmental litigation under the CWA has encompassed regulatory enforcement actions against private individuals, businesses, and municipalities; permit challenges (including challenges to state-issued NPDES permits and sludge permits under Section 405 of the CWA, 33 U.S.C. § 1345); challenges to state-issued Total Maximum Daily Loads under Section 303(d) of the CWA, 33 U.S.C. § 1313(d); and challenges to state water quality standards adopted under Section 303(c) of the CWA, 33 U.S.C. § 1313(c). My experience with federal litigation arising under the ESA has included the present

DECLARATION OF BRYAN TELEGIN – Page 3

action, involving state-issued TMDLs, as well as challenges to several federal timber sales and an aggregate mine in Oregon.

6. In addition to the above, the skills and experience that I brought to this case are directly tied to my personal involvement in a prior case brought by NWEA against EPA in 2006 and resulting in the published opinion *Northwest Environmental Advocates v. EPA*, 855 F.Supp.2d 1199 (D. Or. 2012), and which we have referred to in our briefing as "*NWEA II*." In that case, NWEA challenged EPA's approval of Oregon's "Natural Conditions Criterion," which was the same state law provision that was used to generate the challenged temperature TMDLs in this case. As a student at Lewis & Clark Law School, I participated heavily in the summary judgment briefing in *NWEA II* as part of my work with Lewis & Clark's environmental law clinic. As part of my duties, I spent many, many hours studying Oregon's "designated use" tables and maps, cataloguing how the state had proposed to protect cold-water salmonids across the entire state, on a waterbody-by-waterbody basis. My extensive familiarity with that issue, in turn, made me uniquely qualified to handle the current lawsuit, which involved Oregon's attempted departure from those designated use tables and maps via the Natural Conditions Criterion. My familiarity with the record in *NWEA II* allowed me to assess the administrative record in this case much more efficiently, as there was significant overlap and I was already familiar with the policy and legal bases of EPA's actions, and of NWEA's opposition and goals. Although this case has still been extremely complex, my experience and familiarity with the issues in *NWEA II* also equipped me to address the legal issues in this case far more efficiently, as this case grew out of the issues and rulings in *NWEA II*.

7. Consistent with the billing practices of Bricklin & Newman, I keep contemporaneous records of my time, which I record in six-minute increments. My time sheets

DECLARATION OF BRYAN TELEGIN – Page 4

for this case report that I spent a total of 1,141.2 hours on this lawsuit. However, I am seeking reimbursement for only 1,045.6 hours of my time (a reduction of 95.6 hours). The details of my time spent on this case are included in Exhibit A to this declaration, which includes all of my time entries for this matter. Time entries for which I am not seeking reimbursement are represented with strikethrough text. Time entries that I have reduced for purposes of this fee petition contain a notation of the reduction in bold text.

8.  Among other things, my time entries reflect the fact that I was the lead author on many of NWEA's submissions in this matter, including, *inter alia*: the complaint and amended complaints, and associated pre-suit notice letters (ECF Nos. 1, 7, & 11); NWEA's successful motion for summary judgment, responses to opposing motions and reply, and sur-reply (ECF Nos. 78, 102, & 115); NWEA's successful objections to the Findings and Recommendation issued by Magistrate Judge Acosta, responses to opposing objections, and NWEA's successful reply (ECF Nos. 140, 143, 144, and 148); NWEA's remedies brief and reply (ECF Nos. 158 & 179); and several status reports where the Parties briefed their proposed remedies in response to the Court's remedies order dated December 12, 2018 (ECF Nos. 198 & 206). In addition to these tasks, I represented NWEA in pre-trial settlement negotiations; reviewed and analyzed the administrative record; coordinated with experts and other declarants, and drafted their declarations (*see* ECF Nos. 78–86, 159, & 182); represented NWEA at two oral arguments (one on liability and one on remedy); and drafted many additional docket entries in this now eight-year-old lawsuit. The many tasks that I performed in this case were time-consuming, varied, complex, and ultimately successful. In my opinion, the time that I spent on the many tasks in this case was efficient and reasonable.

9. To determine my requested hourly rates for this case, I consulted the Oregon State Bar Economic Surveys for 2012 and 2017, as required by the Practice Tip accompanying Local Rule 54-3. The hourly rates in the table below are slightly below, at, or slightly above the 75th percentile rate as reported in the Oregon State Bar surveys for lawyers with the same years' experience as me in the Portland area (*e.g.,* two years in 2012, three years in 2013, and ten years in 2020), as adjusted for inflation. Using these rates and my time entries in Exhibit A, the following table represents the number of hours for which I am requesting reimbursement on a yearly basis, as well as the total dollar amount that I am requesting for each year.

| Year | Hours | Hourly Rate | Total |
|---|---|---|---|
| 2012 | 115.7 | $200.00 | $23,140.00 |
| 2013 | 70.1 | $210.00 | $14,721.00 |
| 2014 | 218.5 | $265.00 | $57,902.50 |
| 2015 | 115.7 | $275.00 | $31,817.50 |
| 2016 | 136.6 | $310.00 | $42,346.00 |
| 2017 | 108.6 | $350.00 | $38,010.00 |
| 2018 | 215.4 | $365.00 | $78,621.00 |
| 2019 | 43.8 | $380.00 | $16,644.00 |
| 2020 | 21.2 | $395.00 | $8,374.00 |
| | | **GRAND TOTAL** | **$311,576.00** |

10. As seen in the table above, I am requesting a grand total of $311,576.00 for my time on this case. In my opinion and experience, this is a reasonable total given my hourly rate and total hours of work, especially in light of the complex, time-consuming nature of the case.

11. In addition, Exhibit A shows that my firm has incurred $1,376.10 in costs associated with this case, bringing my total request for fees and costs to $312,952.10.

/ / /

/ / /

DECLARATION OF BRYAN TELEGIN – Page 6

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of November, 2020, at Bainbridge Island, Washington.

                                      *s/ Bryan Telegin*
                                      Bryan Telegin, OSB No. 105253